UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMON KRUMMEL,                                  Case No. 13-13537

        Plaintiff,                         Arthur J. Tarnow
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)**

## I. PROCEDURAL HISTORY

### A. Proceedings in this Court

On August 16, 2013, plaintiff Damon Krummel filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Arthur J. Tarnow referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claims for disability

insurance benefits and supplemental security income. (Dkt. 2). This matter is

before the Court on cross-motions for summary judgment. (Dkt. 9, 10).

### B. Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits on August 5,

2010, and claim for supplemental security income on August 16, 2010, alleging in both disability beginning August 1, 2009.  (Dkt. 6-5, Pg ID 157-58, 159-63). Plaintiff's claims were initially disapproved by the Commissioner on December 2, 2010.  (Dkt. 6-3, Pg ID 101-02).  Plaintiff requested a hearing and on September 23, 2011, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") Kevin W. Fallis, who considered the case de novo.  (Dkt. 6-2, Pg ID 61-99).  In a decision dated December 12, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 42-56).  Plaintiff requested a review of this decision on January 24, 2012.  (Dkt. 6-2, Pg ID 40).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 12, 2013, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 36-38); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1968 and was 43 years old at the time of the administrative hearing, and 41 years old on the alleged disability onset date.  (Dkt.

6-2, Pg ID 54).  Plaintiff had past relevant work as a carwash attendant, mover and laborer, roofer, and stocker and shipper.  (Dkt. 6-2, Pg ID 54).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 6-2, Pg ID 47).  At step two, the ALJ found that plaintiff's chest pains, hypertension, depression, anxiety, explosive personality disorder and poly substance abuse were "severe" within the meaning of the second sequential step. (Dkt. 6-2, Pg ID 47).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 6-2, Pg ID 47-49).  The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to performing simple, routine and repetitive tasks in a work environment free of fast paced production requirements, involving only simple work related decisions and routine work place changes; can have only occasional and superficial interaction with the public and with co-workers; would require an at will sit/stand option provided they were not off task more than ten percent of the work period; can never climb ladders, ropes or scaffolds; can frequently stoop, kneel, crouch, crawl and climb ramps and stairs; must avoid concentrated exposure to excessive vibration; and must avoid all exposure to unprotected heights.

(Dkt. 6-2, Pg ID 49-54).

At step four, the ALJ found that plaintiff had past relevant work as a carwash attendant, mover and laborer, roofer, and stocker and shipper, and that plaintiff was unable to perform any past relevant work because that work did not permit plaintiff to sit and stand at will.  (Dkt. 6-2, Pg ID 54).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy, such as a material handler, packer and assembler.  (Dkt. 6-2, Pg ID 54-55).

### B.   Plaintiff's Claims of Error

Plaintiff claims that the ALJ erred in assessing his credibility and in failing to properly assess the medical records, and thereby formed an inaccurate hypothetical that did not accurately portray plaintiff's impairments.  Plaintiff asserts that once the ALJ determined that plaintiff "is unable to perform any past relevant work" (Tr. 29), the burden shifted to the Commissioner to prove that plaintiff was capable, considering his age, education, and past work experience, of engaging in other work, 20 C.F.R. §§ 404.1520(b)-(f), and to meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has a vocational qualification to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

The ALJ here found that plaintiff suffered from the severe impairments of "chest pains, hypertension, depression, anxiety, explosive personality disorder and

4

poly substance abuse." (Tr. 22).  The ALJ then concluded "… that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 25).  Plaintiff argues that this conclusion is clearly incorrect and that his statements concerning the intensity, persistence and limiting effects of his symptoms are supported by the medical records.  Specifically, plaintiff testified that he has "mood swings, I still have mood swings" as well as "anxiety." (Tr. 45).  He also stated that "the main event that keeps me from working is probably my attitude and working with others," and that he does not "work good with others." (Tr. 46).  Plaintiff also has testified that he has problems with "doing stressful work, a lot of bending, walking or standing, I get cramps in my legs and my back, my back starts to bother me." (Tr. 49).  He stated that he has back pain "roughly four out of the seven days," and that he has knee pain that bothers him "when I walk a lot, or stand for long periods, I get pain…." (Tr. 51-52).  In terms of his heart, plaintiff stated that "my heart speeds up over 150 beats a minute" and that he feels "sweaty, clammy, dizziness, chest pains." (Tr. 54).  He also stated that he can only sit for 45 minutes, stand for "no more than an hour," and walk for "about a block…." (Tr. 55).

Plaintiff contends that the medical record supports his testimony. Specifically, with regard to his mental issues, the medical record indicates that plaintiff has symptoms of loss of interest, sadness, nervousness, hard to control worry, feels hyper, and has had a traumatic event. (Tr. 199). The diagnoses were "depressive disorder NOS," "anxiety disorder NOS," and a GAF of 50. (Tr. 204). Plaintiff further contends that the records indicate that he is "very remorseful of his behaviors ... tearful…." (Tr. 209). The record also reveals that plaintiff is "ADHD subtype is the predominantly inattentive type." Additional symptoms include "increased nervousness, mood swings, anxiety, sleep disturbances and emotional problems…." (Tr. 272).

In regard to his physical pain, plaintiff argues that the records indicate an assessment of hypertension and chest pains (Tr. 264), and that he was "currently experiencing symptoms." (Tr. 266). The record also reveals symptoms of "chest pain, palpitations and chest pressure…." (Tr. 268). Thus, plaintiff concludes that his testimony regarding his severe medical impairments is backed up by medical documentation, and for the ALJ to indicate that his testimony was not credible is clearly in error.

Plaintiff asserts that the vocational expert testified, in response to the hypothetical the judge decided to follow, that plaintiff could perform work as a material handler, packer, and assembler. (Tr. 30). However, according to

6

plaintiff, when the vocational expert was asked the effect of being off task 20% of the day, the expert testified that there would be no jobs. (Tr. 71). The vocational expert also testified that there would no jobs if absenteeism was at two days per month. (Tr. 71). Plaintiff argues that those hypothetical questions regarding percentage off task and absenteeism should have been followed, and that the ALJ's hypothetical, as followed in reaching his decision, did not mirror the claimant as required.

Plaintiff argues that it is clear from the medical evidence of record and his testimony that his ability to engage in substantial gainful activity is severely limited as a result of his physical and mental conditions. As such, plaintiff would be capable of engaging in substantial gainful activity only by enduring great pain and should, therefore, be found disabled in accordance with the Social Security Rules and Regulations. Plaintiff contends that the reasons given by the ALJ in discounting plaintiff's testimony are clearly insufficient, and go against the rules, regulations and cases cited to above and, therefore, the great weight of the evidence does support plaintiff's testimony regarding his conditions and problems. Plaintiff therefore requests this Court to reverse the decision denying benefits and remand this case with an award of benefits, or, in the alternative, remand this matter for further proceedings consistent with the above arguments.

**C.      The Commissioner's Motion for Summary Judgment**

The Commissioner argues that the ALJ met his burden, at step five of the

sequential analysis, to find that plaintiff could perform jobs that existed in

significant numbers in the local economy.  According to the Commissioner,

plaintiff's basic argument is that the ALJ erred in both his credibility assessment

and in his analysis of the medical records, and that these errors, in turn, led to the

ALJ posing a defective hypothetical question, or one that did not accurately

portray plaintiff's individual impairments.  The Commissioner contends, however,

that the record describes a claimant who has not only failed to follow his doctor's

directives, but also told his treating cardiologist that he was not going to take his

medication and that he was not even going to see this doctor again.  (Tr. 310).  The

Commissioner continues that the ALJ adequately summarized the medical

evidence of record and discussed many exhibits and reports that plaintiff has

ignored.  Specifically, the ALJ stated that he was assigning significant weight to

the results of the consultative examination done by Dr. Richard C. Gause, M.D.,

the consultative psychological examination done by Dr. Karen Marshall, Psy.D.,

and the review done by state agency psychologist Dr. W. Nordbrock, Ph.D.  (Tr.

27-28).  According to the Commissioner, nowhere in his brief does plaintiff even

acknowledge the reports from these doctors.  Thus, the Commissioner concludes,

plaintiff cannot challenge the ALJ's reliance on them.

8

The Commissioner further argues that the ALJ posed a hypothetical question that accurately portrayed plaintiff's impairments, and that the ALJ's reliance on the vocational expert's response to the question is well supported and plaintiff's challenges to the ALJ's decision are not persuasive.  For example, citing to his testimony, plaintiff has highlighted his statements about his inability to get along or work with others.  However, plaintiff fails to acknowledge that the ALJ, in his RFC finding, found that plaintiff could have only occasional and superficial contact with the public and with co-workers.  (Tr. 24).  Similarly, plaintiff highlights statements about how doing stressful physical work that involves a good deal of walking or standing causes a number of symptoms, including leg cramps and back pain, but the ALJ accommodated those complaints by allowing a sit/stand at will option for plaintiff, thus alleviating the concern about doing a lot of standing and walking.  (Tr. 24).

The Commissioner further asserts that plaintiff has referred to one of the hypothetical questions posed by the ALJ, in which the ALJ included the factor of the hypothetical worker being off-task twenty percent of the time.  (Tr. 71).  In response to that question, the vocational expert testified that there would be no jobs.  (Tr. 71).  However, plaintiff has not referred to any medical report or physician opinion of record that stated plaintiff would need to be off-task twenty percent of the time.  Nor has plaintiff shown why the hypothetical question that

9

the ALJ relied on was faulty. Indeed, the Commissioner continues, the question that the ALJ ultimately relied upon included a sit/stand option at will and the occasional and superficial contact with others, along with a host of other limitations. (Tr. 68). In response, the vocational expert identified jobs as a material handler, packer, and assembler, all of which existed in significant numbers in the state of Michigan. (Tr. 68-69). The Commissioner contends that the ALJ reasonably relied on the vocational expert's response to this hypothetical question. (Tr. 30). *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."). The Commissioner argues that because the hypothetical question that the ALJ relied on accurately portrayed plaintiff's individual physical and mental impairments, the ALJ's decision is supported by substantial evidence.

The Commissioner further argues that the ALJ properly weighed the medical opinion evidence. Specifically, in his decision, the ALJ explained why he assigned significant weight to the reports and opinions of three physicians/mental health professionals of record. The ALJ discussed the consultative physical examination done by Dr. Gause in October 2010, and assigned great weight to Dr. Gause's observations. (Tr. 27). The ALJ also discussed the consultative

10

psychological exam done by Karen Marshall, Psy.D., and assigned significant weight to Dr. Marshall's findings because she had examined plaintiff and because she submitted opinions that were largely consistent with the record evidence. (Tr. 27). The ALJ also assigned significant weight to the review of the evidence done by the state agency reviewer, Dr. Nordbrock. (Tr. 27-28). The Commissioner contends that plaintiff has not even acknowledged the ALJ's discussion of those three opinions, and thus he certainly has not challenged the ALJ's reliance on those three opinions. Instead, plaintiff's brief includes a section that discusses the weight assigned to treating physician opinions, but fails to identify *any* particular physician of record as a treating physician in his brief. Thus, the Commissioner concludes, the relevance of this section is questionable. The Commissioner continues that, at his administrative hearing, plaintiff identified Dr. Jeffrey Ledis, D.O., as his cardiologist and testified that Dr. Ledis had not put any restrictions on him. (Tr. 44). Indeed, the Commissioner asserts, Dr. Ledis is the physician that plaintiff saw in September 2011. (Tr. 310). At that visit, plaintiff told Dr. Ledis that he was not taking two of his cardiac medications and that he was not going to be taking those medications. (Tr. 310). In addition, plaintiff told Dr. Ledis that in light of the normal result on his cardiac catheterization, he did not want to have further testing or even a return visit with Dr. Ledis. (Tr. 310). The Commissioner argues that given the relationship he had with the treating cardiologist, Dr. Ledis,

11

plaintiff's references to treating physician's opinions and case law appear
misplaced in his brief.

The Commissioner further asserts that plaintiff follows his section about
treating physician opinions with a reference to *Walston v. Gardner,* 381 F.2d 580,
586 (6th Cir. 1967), apparently for the proposition that it is wrong for an ALJ to
rely on the claimant's ability to perform simple household chores to find the
claimant not credible.  Yet, the Commissioner contends that this is not a case
where the ALJ improperly relied on plaintiff's activities to find him not credible or
even not disabled.  Rather, according to the Commissioner, this is a case where the
ALJ found plaintiff less than credible due to allegations that simply lacked support
in the medical record.  The ALJ did note that plaintiff's activities were
inconsistent with the alleged severity of his impairments, but the Commissioner
argues that this was just one of many factors that led the ALJ to find plaintiff not
disabled. (Tr. 28-29).  The Commissioner contends that the weight of the
evidence does not show, as plaintiff argues, that he is disabled.  Rather, the
evidence shows that the ALJ reasonably found that plaintiff's hypertension was
well managed with prescription medications, that plaintiff's mental problems were
effectively managed with therapy and medications, and that plaintiff's actions with
respect to his alleged cardiac problems were not so severe as to interfere with his
ability to engage in sustained work. (Tr. 26).  Because plaintiff has not effectively

12

challenged any of these findings, the Commissioner asserts that she is entitled summary judgment.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

13

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

14

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

15

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits

17

are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.      **Analysis and Conclusions**

Plaintiff complains that each element of the hypothetical question posed to the vocational expert does not accurately describe plaintiff in all significant, relevant respects and that the vocational expert's testimony at the hearing therefore does not constitute substantial evidence supporting the ALJ's determination that plaintiff is not disabled.  Although plaintiff phrases this as a Step Five finding, the undersigned concludes that plaintiff is attempting to refute the RFC finding via a purported Step Five error.  Plaintiff points to his severe impairments of chest pains, hypertension, depression, anxiety, explosive personality disorder and poly substance abuse, and argues that the ALJ erred in finding that plaintiff's testimony as to the intensity and persistence of his symptoms associated with those impairments was not entirely credible.  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a).  Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon

alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's testimony, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by

20

treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.  Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect."  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The undersigned suggests that the ALJ's finding that the objective record evidence did not support plaintiff's claims of disabling limitations is supported by substantial evidence.  Here, as discussed above, the ALJ considered plaintiff's allegations in light of the other evidence in the record and sufficiently explained how plaintiff's allegations were inconsistent with the record evidence.  For example, plaintiff testified that "the main event that keeps me from working is probably my attitude and working with others.  I don't work good with others" (Tr. 46), and he asserts that he was diagnosed with "depressive disorder NOS, anxiety disorder NOS" and assigned a GAF score of 50.  (Tr. 204).  The ALJ acknowledged that plaintiff was diagnosed with anxiety, depression and explosive personality disorder, but not every diagnosable impairment is necessarily disabling.  *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 713 (6th Cir. 2013)

(citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an impairment] . . . says nothing about the severity of the condition.")).  The ALJ acknowledged that plaintiff received inpatient behavioral health treatment in August 2010, and while plaintiff was sad, depressed and anxious, he was also well groomed, his attitude was cooperative, his motor activity was calm, his speech was within normal limits, his ability to communicate was normal, his affect and thought content was within normal limits, and he was alert, talkative and oriented to person, place and time.  (Tr. 26, citing Tr. 201, 260).  And, in March 2011, plaintiff had no increased nervousness, depression or mood swings.  (Tr. 26, citing Tr. 264).  The ALJ concluded that plaintiff's medical records "indicate that [plaintiff's] condition presented few symptoms and was effectively managed with therapy and psychotropic medication."  (Tr. 26).  The ALJ also gave significant weight to the opinion of consultative examiner, Karen Marshall, Psy.D., who examined plaintiff and determined that he retained the ability to understand, remember and complete simple repetitive tasks in a supportive environment (Tr. 27, citing Tr. 214-18), and significant weight to the opinion of W. Nordbrock, Ph.D., who reviewed plaintiff's medical records and determined that plaintiff was capable of performing simple one- to two-step tasks with adequate pace and persistence and without undue supervision.  (Tr. 27-28, citing Tr. 227-41).  As the Commissioner correctly states, plaintiff wholly fails to address these opinions,

much less the ALJ's reliance on these opinions, in his brief.[1]

As for plaintiff's complaints of hypertension and chest pains, the ALJ acknowledged that the medical evidence indicates that plaintiff had chest pains and that his heart was tachycardic, but that, on examination, plaintiff had a normal heart rate and rhythm, normal heart sounds, no varicosital changes in his extremities or peripheral edema, and that the results from plaintiff's September 2011 catheterization test were normal and showed no coronary artery disease.  (Tr. 25-26, citing Tr. 263-64, 268, 272, 310).  The ALJ concluded that "the medical evidence of record indicates that [plaintiff] experienced few symptoms associated with his chest pains and that the symptoms he did experience were not of the severity to significantly interfere with his ability to engage in sustained work," and that while the medical records contain some instances of slightly elevated blood pressure levels, "there is no indication [plaintiff's] diagnosis of hypertension presented any significant symptoms, or posed a threat to his overall health such as

---

[1] Although not raised by the parties, the undersigned notes that the ALJ properly addressed plaintiff's drug and alcohol abuse.  In reaching his finding that plaintiff is not disabled, the ALJ recognized that the medical evidence indicates that plaintiff has a history of poly substance abuse, and that Dr. Marshall's opinion reflects the impact of the alcohol abuse when plaintiff was using alcohol.  (Tr. 27).  However, "[i]f the five step sequential evaluation process, without removing the effects of substance abuse disorders from consideration, indicates that the plaintiff is not disabled then there is no need to continue with the substance abuse materiality analysis of 20 C.F.R. §§ 404.1535 and 416.935."  *Stroud v. Comm'r of Soc. Sec.*, 2011 WL 4576032, at *12 (E.D. Mich. July 25, 2011) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 694-95 (8th Cir. 2003), *adopted by* 2011 WL 4576387 (E.D. Mich. Sept. 30, 2011), *aff'd* 504 Fed. Appx. 458 (6th Cir. 2012)).  Thus, as in *Stroud*, "[b]ecause [p]laintiff was found not to be disabled [despite plaintiff's long struggle with sobriety], the ALJ was not required to decide the issue of whether [poly substance] abuse was material to a finding of disability."  *Id.*

end organ damage," but rather "was well managed with prescription medication." (Tr. 26). The ALJ also gave great weight to the opinion of consultative examining physician Dr. Richard C. Gause, who concluded that plaintiff's examination revealed no evidence of any cardiac abnormality. (Tr. 27, citing Tr. 219-26). Dr. Gause further noted that plaintiff had no difficulty getting on and off the examination table, no difficulty heel and toe walking, no difficulty squatting and hopping, and that range of motion studies of the joints was normal. (Tr. 220). Plaintiff's motor strength and tone were normal and plaintiff walked with a normal gait without the use of an assistive device. *Id.* Again, as the Commissioner points out, plaintiff fails to address Dr. Gause's opinion, or the ALJ's reliance on that opinion.[2] Dr. Gause's opinion is consistent with the record evidence, which generally noted that plaintiff was completely asymptomatic and hemodynamically stable. (Tr. 263, 268, 298, 301, 310).

In contrast to plaintiff's subjective complaints of disabling pain, the ALJ also properly noted the wide range of activities in which plaintiff engages, including preparing meals, shopping in stores, managing his finances

---

[2] Although plaintiff's motion contains a general discussion of the "treating physician rule," he does not identify any treating physician or treating physician's opinion that the ALJ purportedly failed to properly address. (Dkt. 8, pp. 12-15). Thus, this argument should be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

independently, taking care of his pet dog, including walking and feeding it,
performing household chores, including washing dishes and sweeping on a daily
basis, and that with the exception of bathing and dressing, he had no problems
with personal care.  (Tr. 28-29, citing Tr. 160-67).  Plaintiff does not contest the
ALJ's findings regarding his daily activities, and the undersigned notes that an
ALJ can consider daily activities in assessing credibility.  20 C.F.R.
§ 404.1529(c)(3)(I); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392
(6th Cir. 2004) (recognizing that in nearly all cases, an evaluation of a claimant's
daily activities is relevant to the evaluation of subjective complaints and
ultimately, to the determination of disability); *Heston v. Comm'r of Soc. Sec.*, 245
F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of
limitations in light of other evidence of claimant's ability to perform tasks such as
walking, going to church, going on vacation, cooking, vacuuming and making
beds).

Plaintiff's claim that the ALJ's RFC determination is in error because that
determination does not include plaintiff's subjective testimony is unavailing, as
"an ALJ is not required to accept a claimant's subjective complaints and may
properly consider the credibility of a claimant when making a determination of
disability," and "can present a hypothetical to the [vocational expert] on the basis
of his own assessment if he reasonably deems the claimant's testimony to be

25

inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Plaintiff appears to be arguing that merely because he has severe impairments, he

must be precluded from all work.  However, that is inaccurate.  The residual

functional capacity circumscribes "the claimant's residual abilities or what a

claimant can do, not what maladies a claimant suffers from-though the maladies

will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard*

*v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe

impairment may or may not affect his or her functional capacity to do work. One

does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL

1765480, at *5 (E.D. Mich. July 14, 2004).  "The regulations recognize that

individuals who have the same severe impairment may have different [residual

functional capacities] depending on their other impairments, pain, and other

symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir.

2007); 20 C.F.R. § 404.1545(e).  The ALJ accommodated plaintiff's mental

limitations by restricting him to performing simple, routine and repetitive tasks

free of past paced production requirements, and with only occasional and

superficial interaction with the public and coworkers.  The ALJ accommodated

plaintiff's physical limitations by restricting him to work which would allow an at

will sit/stand option, and no climbing of ladders, ropes or scaffolds, and other

postural limitations.  Plaintiff contends that the ALJ should have followed the

hypothetical questions which included a limitation of being off task 20% of the day or absenteeism at two days per month.  However, as the Commissioner correctly states, plaintiff has failed to point to any record evidence supporting such limitations.  Thus, while the medical evidence indicates that plaintiff does have severe impairments, as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of his limitations.  Indeed, there is evidence to support the ALJ's finding that plaintiff was able to perform a limited range of medium work, and thus there is substantial evidence to support the ALJ's finding that plaintiff was not fully credible, and the plaintiff's claims of error should be denied.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6tyh Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

27

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

28

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: May 6, 2014                          s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on May 6, 2014, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Richard J. Doud, John L. Martin, Vanessa Miree
Mays.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov